UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA L. ALGER, SR.,
     Plaintiff,
v.

MCDOWELL, *et al.*,
     Defendants.
_____/

Case No.: 19-12889

Stephanie Dawkins Davis
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON MDOC DEFENDANTS'
MOTION TO TRANSFER CASE (ECF No. 34) AND SCREENING OF
<u>AMENDED COMPLAINT</u>**

## I.    BACKGROUND

### A.    <u>Procedural History</u>

Plaintiff Joshua L. Alger, Sr., filed this prisoner civil rights suit on October 3, 2019, without the assistance of counsel.  (ECF No. 1).  He is proceeding *in forma pauperis*.  (ECF No. 4).

On January 14, 2020, District Judge Nancy G. Edmunds entered an Opinion and Order dismissing various claims and defendants, leaving thirteen defendants. (ECF No. 6).  On May 7, 2021, Defendants Jason Erway, Patrick Harrington, Jerry Harwood, McDowell, Jason Mucha, Peltier, and Thomas (collectively "MDOC Defendants") moved to transfer venue to the Western District of Michigan, or alternatively to sever the case.  (ECF No. 34).  Plaintiff was granted two extensions

of time to file a response; the last response deadline was November 11, 2021.

(ECF No. 41).  Plaintiff timely responded.  (ECF No. 45).  But first, on September

7, 2021, Plaintiff moved to amend his complaint with an attached proposed

amended complaint.  (ECF No. 42).  The Court granted the motion to amend the

complaint.

This case was referred to the undersigned for all pretrial proceedings.  (ECF

No. 20).  This matter is now ready for report and recommendation.

For the reasons discussed below, the undersigned recommends certain

claims and defendants be dismissed from the amended complaint pursuant to 42

U.S.C. § 1997e(c) and 28 U.S.C. § 1915(e)(2)(B) and that MDOC Defendants'

motion to transfer case be denied without prejudice.

B.     Original Complaint and Screening Opinion and Order

The occurrences giving rise to the claims against the 37 original defendants

took place at five different correctional facilities from June 2016 through the date

of the complaint.  Plaintiff alleged the defendants engaged in a conspiracy to

retaliate against him for his grievances and lawsuits, denied him due process by

failing to investigate misconduct tickets against him, transferred him many times,

and were deliberately indifferent to his mental health needs.  (ECF No. 1; ECF No.

6, PageID.165-67).

District Judge Edmunds issued an Opinion and Order screening Plaintiff's complaint pursuant to 42 U.S.C. § 1997e(c) and 28 U.S.C. § 1915(e)(2)(B).  Judge Edmunds summarily dismissed the official capacity claims.  She dismissed the 42 U.S.C. § 1985 conspiracy claims for failure to plead a conspiracy with particularity.  The claims related to Plaintiff's security classification and transfers were dismissed for Plaintiff's failure to plead the defendants acted in retaliation.  The supervisory liability claims were dismissed because such claims could not exist in 42 U.S.C. § 1983 claims.  The Eighth Amendment deliberate indifference claim was dismissed for failure to state a claim because Plaintiff was placed in suicide observation and provided urgent medical care when he harmed himself and was taken to the hospital.  Defendant hearing officers and investigators Theut and Vansloten were dismissed on absolute immunity and failure to state a claim.  Plaintiff's religious freedom act claim and claims against Unknown Medical Provider Doctor (Cotton), M. Howard, Goodspeed, G. Stephenson, Stanley Kinner, Walsh, Bridges, Mona Golson, Greason, and Unknown Records Officer Supervisor were dismissed for failure to plead any facts giving rise to a constitutional violation.  (ECF No. 6).

## III.    ANALYSIS AND RECOMMENDATIONS

As noted, the Court granted Plaintiff's motion to amend the complaint. What follows is a screening of the amended complaint and a recommendation on MDOC Defendants' motion to transfer case.

A.    Screening of First Amended Complaint

A federal district court must screen a prisoner's pro se complaint and dismiss the complaint or any portion of the complaint that is frivolous, malicious, fails to state a claim for which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  A complaint is frivolous if it lacks an arguable basis in law or fact and may be dismissed if it is "based on legal theories that are indisputably meritless."  *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 327-28 (1989)); *see also Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000).

The dismissal standard of Federal Rule of Civil Procedure 12(b)(6) described in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), governs failure to state a claim under § 1915(e)(2).  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed

4

factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court holds pro se complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by pro se parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  "[C]ourts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

Plaintiff names 49 defendants in their individual capacities, listed here with the facility at which they worked (newly added defendants in bold):[1] (1) MacLaren (KCF); (2) McDowell (KCF); (3) Vansloten (KCF); (4) Mills (KCF); (5) Theut (KCF); (6) Sgt. Blemke (KCF); (7) Jerry Harwood (KCF); (8) Patrick Harrington (KCF); (9) O'Brien (KCF); (10) Soriano (KCF); (11) Herbert (URF); (12) Jenkins (URF); (13) Unknown Nurse (URF); (14) Unknown Warden (URF); (15) Unknown Deputy (unknown); (16) Unknown Warden #1 (URF); (17) Unknown Captain #1 (URF); (18) Unknown Unit Chief (URF); (19) **Lt. Lavine** (JCF); (20) **Unknown Captain #2** (JCF); (21) **Sgt. Curtis** (JCF); (22) **ARUS Chadwick** (JCF); (23) Deputy Warden (unknown); (24) Floyd (JCF and Carson City Correctional Facility "DRF"); (25) HUM Howard (JCF); (26) Patrick (JCF); (27) **Lt. Benson** (DRF); (28) **Sgt. Crandall** (DRF); (29) T. Mackie (ECF); (30) **Picardat** (ECF); (31) **ARUS Weaver** (ECF); (32) Peltier (ECF); (33) T. Ball (ECF); (34) Erway (ECF); (35) Jason Mucha (ECF); (36) RUM Thomas (ECF); (37) Stanley Kinner (Macomb Correction Facility "MRF"); (38) **Beauvais** (MRF); (39) **Dr. Posios** (MRF); (40) **Leach** (MRF); (41) **Warren** (MRF); (42) RUM Greason (unknown); (43) **Unknown Deputy Warden #2** (MRF); (44) Goodspeed (MRF); (45) George Stephenson (MRF); (46) Bridges (MRF); (47) Golson (MRF);

---

[1] 49 are listed in the case caption, 44 are listed under "Parties" in the amended complaint. Missing in the "Parties" section are defendant Greason, Unknown Deputy, and Deputy Warden.

(48) **Treptow**[2] (Earnest C. Brooks Correctional Facility "LRF"); (49) **Fierro**

(LRF).  (ECF No. 42, PageID.456-59).  ECF, KCF, URF, DRF, and LRF are in the

Western District; MRF and JCF are in the Eastern District.

Preliminarily, there are no allegations in the complaint naming defendant

Chadwick.  There are several allegations against "Chadwell."  Chadwell is not

listed as a defendant in the amended complaint.  It is conceivable Chadwick and

Chadwell are one and the same but one of the spellings is incorrect.  Therefore, the

undersigned does not recommend dismissing "Chadwick" for failure to plead any

claims against him.  Where allegations against this defendant are addressed below,

the undersigned will refer to him as Chadwell as that is how Plaintiff referred to

him.

The claims and facts in the amended complaint are much like the original

complaint.  Plaintiff alleges multiple conspiracies and constitutional violations of

retaliation, deliberate indifference, and denial of due process.  Some allegations

follow.  When necessary in the analysis, further factual development is provided.

Plaintiff asserts while incarcerated at KCF, defendant McDowell approached

him in the medication line on June 10, 2016.  Plaintiff was taking his medication

and left the line to get more water.  McDowell allegedly harassed Plaintiff about

taking his medication and told Plaintiff he would issue a false substance abuse

---

[2] Once spelled "Tretow" in the amended complaint.

ticket.  (*Id.* at PageID.460, ¶ 52-53).  Plaintiff threatened to file a grievance and a lawsuit; McDowell retaliated against those threats by issuing a false substance abuse ticket.  (*Id.* at ¶ 54-55).  Defendant Mills allegedly filed three additional retaliatory misconduct tickets against Plaintiff.  (*Id.* at PageID.461, at ¶ 58-60).  Defendants Vansloten and Blemke are accused of denying Plaintiff a fair hearing on the tickets by failing to give him timely notice of the tickets.  (*Id.* at PageID.461-62).  Other defendants allegedly refused to investigate the truth of the charges.  Defendant O'Brien is accused of conducting a hearing on misconduct tickets without an investigation and of issuing a biased decision of guilt.  (*Id.* at PageID.463, at ¶ 73; PageID.464, at ¶ 77).  Similar allegations are raised later in the complaint about a misconduct ticket for possession of Excedrin.  (*Id.* at PageID.464, at ¶ 77-79).

While housed at URF (Chippewa Valley Correctional Facility) during an unknown period (but likely during June 2016 based on the placement in the amended complaint), he was placed in a suicide observation cell.  This cell did not have a camera or a prisoner observation assistant.  There was a jagged bolt sticking out of the floor which Plaintiff used to cut his wrist.  He allegedly was not offered a mental health consultation and was denied proper medical care.  He was transported to the emergency room after cutting his wrist.  The next day he was

transferred from URF back to KCF.  There, he was given a prisoner observation assistant in the cell with him.  (*Id.* at PageID.462, ¶ 66-67).

On June 28, 2016, Plaintiff alleges defendants Lavine, Unknown Captain #2, Curtis, and Chadwell conspired to transfer Plaintiff from KCF to JCF in retaliation for Plaintiff's grievances at KCF.  (*Id.* at PageID.465, at ¶ 85).  At JCF, on July 8, 2016, Plaintiff was placed in a cell covered in feces for five days and was not allowed a shower.  He sent a kite (letter) to Chadwell and defendant Floyd, but they did not respond for two weeks.  (*Id.* at PageID.465-66, at ¶ 86).  JCF Defendants Floyd and Howard were deliberately indifferent to Plaintiff's request to see a healthcare provider for briefs and wet wipes to address an incontinence issue. (*Id.* at PageID.466, at ¶ 87).

During June and July 2017, Plaintiff contends defendant Jenkins threatened retaliation and later caused Plaintiff's law library schedule to be terminated.  (*Id.* at PageID.465, at ¶ 82-84).

Plaintiff continues the complaint alleging deliberate indifference for denial of briefs and wet wipes for an incontinence issue, denial of legal mail, erroneous security classification, and denial of a religious diet and religious calendar.  (*Id.* at PageID.466-70).

       a.     Conspiracy Claims

As in the original complaint, Plaintiff again alleges the defendants, in various groupings, conspired together to violate his Constitutional rights.  This time, in the amended complaint, Plaintiff invokes 42 U.S.C. § 1983, not § 1985.  A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007).  To survive dismissal, Plaintiffs needed to allege facts that, when accepted as true, would allow a juror to find that "'(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis*, 489 F.3d at 290).  "Although circumstantial evidence may prove a conspiracy, '[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)).

The conspiracy claims in the original complaint were dismissed because they were "wholly conclusory and speculative."  (ECF No. 6, PageID.170).  He did not allege facts showing the defendants entered into an agreement.  The amended complaint allegations are not materially different, should fare no better, and

likewise be dismissed.  For example, he alleges Unknown Warden, Unknown

Deputy Warden, and Unknown Captain #1 "conspired to deprive Plaintiff of

Federal rights by deliberate indifference to his need for mental health treatment"

without factual development. (ECF No. 42, PageID.462, at ¶ 66).  In one

paragraph, he alleges defendants Harwood and Harrington conspired to orchestrate

a retaliatory transfer to a higher security level at a facility with harsh conditions.

(*Id.* at PageID.464, at ¶ 45).  In the original complaint, this conspiracy claim was

dismissed where Plaintiff alleged (1) Harwood approved a falsified transfer

screening to increase Plaintiff's security level, (2) Harrington falsified the

screening as retaliation for a threat to sue, and (3) Harrington changed Plaintiff's

previous screening score and added six misconducts to keep adding points to the

score.  (ECF No. 1, PageID.19).  Plaintiff alleged less in the amended complaint.

In the paragraphs in which he alleges conspiracy, Plaintiff did not allege facts

showing a single plan existed to deprive Plaintiff of his federal rights.  (*See* ECF

No. 42, at ¶¶ 60, 62, 66, 68, 75, 85, 102, 102, 109).[3]  In opposition to the motion to

transfer venue, Plaintiff argues he adequately pleaded a conspiracy between the

Western District Defendants at KCF and ECF and the Eastern District Defendants

at the remaining facilities.  (*See* ECF No. 42, PageID.455).  For the reasons just

explained, he did not.  "An allegation of parallel conduct and a bare assertion of

---

[3] There are two paragraphs labeled "102."  (ECF No. 42, PageID.469).

conspiracy will not suffice." *Twombly*, 550 U.S. at 556.  Without more, "merely

parallel conduct [] could just as well be independent action." *Id.* at 557.

Because Plaintiff' conspiracy claims are conclusory and speculative, the

conspiracy claims should be dismissed.  The following defendants are named in the

amended complaint only in reference to a conclusory allegation they were involved

in a conspiracy: Sgt. Curtis, Lt. Lavine, and Unknown Captain #2.  These

defendants should be dismissed.

### b.  Minimum Pleading Requirements

A complaint aims to give fair notice to the defendant of what the claim is

and the grounds on which it rests.  *Twombly*, 550 U.S. at 555.  To meet this goal,

the plaintiff must comply with basic pleading requirements including pleading

factual content that allows the Court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.

Plaintiff failed to satisfy the minimal pleading requirements as to defendant

Bridges because he made no specific allegations against him.  Plaintiff listed

defendant Leach in the conclusion of the complaint asserting Leach violated the

First Amendment's guarantee of right of access to the court.  (ECF No. 42,

PageID.472, at ¶ 122).  There are no factual allegations in the complaint involving

Leach to support any claim, let alone a denial of access to the courts claim.  As a

result, Bridges and Leach should be dismissed.

For the next defendants, although Plaintiff provided some facts, he failed to state a plausible claim for relief.  Plaintiff alleges defendant Unknown Patrick at JCF searched Plaintiff's legal property upon his return to the facility from the Muskegon County Jail.  Patrick "detoured it to the property room."  (*Id.* at PageID.466, ¶ 88).  Plaintiff alleges Defendant Stephenson delayed the return of the legal property.  Reading the amended complaint liberally, and assuming these allegations were meant to state a First Amendment denial of access of the courts claim, they are insufficient.  To succeed on such a claim, a prisoner must generally allege that a prison official's interference with his legal mail has affected the prisoner's access to the courts.  *Stanley v. Vining*, 602 F.3d 767, 770 (6th. Cir. 2010) (citing *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)) ("In order to state a claim for denial of meaningful access to the courts, however, plaintiffs must plead and prove prejudice stemming from the asserted violation."); *see also Sprinkle v. Barksdale*, 2009 WL 1956370, at *6 (W.D. Va. July 6, 2009) (dismissing access-to-courts claim based on allegation that a prison official denied the use of a photocopier because the plaintiff did explain how this action caused any injury to his litigation efforts).  Plaintiff has not alleged the diversion of his legal documents and delay in return of the documents prejudiced him in any litigation.  This claim should be dismissed.  As this is the only allegation against Patrick, Patrick should be dismissed from this case.

Plaintiff also alleges Defendant Stephenson, who worked at MRF, was deliberately indifferent by releasing Plaintiff from segregation and forcing him to return to Defendant Kinner's unit, even though he knew that defendant Kinner was retaliating against him with false misconduct tickets.  (ECF No. 42, PageID.471, at ¶ 111).  As this allegation is not about deliberate indifference to serious medical needs, the closest claim is deliberate indifference to a serious risk of harm.  To state such a claim, a prison inmate first must show that the failure to protect from risk of harm is objectively "sufficiently serious."  *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  That is, the inmate must show that "he is incarcerated under conditions posing a substantial risk of serious harm."  *Id.*  Next, the inmate must show that the prison official was deliberately indifferent—that is, that the prison official knew of and disregarded an excessive risk to the inmate's health or safety; the official must both be "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists" and he must actually "draw the inference."  *Id*. (quoting *Farmer*, 511 U.S. at 837).  Plaintiff did not allege any facts giving rise to inference that he was at risk of serious harm by being released back to Kinner's unit—the only "harm" alleged is that Kinner was issuing false misconduct tickets.  So Stephenson should be dismissed from this case.

Against Defendant Golson, administrative assistant at MRF, Plaintiff alleges he "refused to allow Plaintiff a visit with a paid attorney" which resulted in more attorney fees.  Plaintiff describes this action as "retaliation."  (ECF No. 42, PageID.471, at ¶ 112).  To establish a claim of First Amendment retaliation, a plaintiff must show (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two; in other words, the adverse action was motivated at least in part by the plaintiff's protected conduct.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  There are no allegations connecting Golson to any protected conduct or adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct.  Without these allegations, the retaliation claim is speculative and conclusory.  Aside from retaliation, it is unclear what federal right Plaintiff is alleging Golson violated.  Golson should be dismissed.

   c. Hearing Officers

In the screening Opinion and Order, Judge Edmunds dismissed defendants O'Brien and Theut, concluding these defendants were absolutely immune from suit for their findings and determinations at Plaintiff's misconduct hearings.  (ECF No. 6, PageID.172).  As stated in the Opinion and Order, Michigan prison hearing officials are entitled to "'absolute judicial immunity from liability with respect to

their judicial acts.'" *Goldsmith, Sharrett*, 614 F. App'x 824, 827 (6th Cir. 2015)

(quoting *Shelly v. Johnson*, 849 F.2d 228, 229-30 (6th Cir. 1988)). There are two

exceptions to judicial immunity, none of which apply here: first, a judge is not

immune from liability for nonjudicial actions—actions not taken in the judge's

judicial capacity. *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *see also Forrester v.

White*, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature

of the function performed, not the identity of the actor who performed it").

Second, a judge is not immune for actions, though judicial in nature, taken in

complete absence of all jurisdiction. *Id.* at 12.

In the amended complaint, Plaintiff did not set forth any allegations of

wrongdoing against Hearing Officer Theut (except to the extent that he intended to

allege Theut was part of a conspiracy, but the conspiracy claims are conclusory).

He did allege, however, that O'Brien conducted a misconduct ticket hearing

"without any evidence and was biased in her decision of guilt" as retaliation. (ECF

No. 42, PageID.463, at ¶ 73-74; PageID.464, at ¶ 77). Plaintiff's failure to plead

wrongdoing by Theut entitles Theut to dismissal. In as much as a claim exists

against Theut for actions taken in his role as a hearings officer, he is entitled to

immunity. Plaintiff's claims against O'Brien are limited to her acts as a hearing

office, and thus O'Brien is absolutely immune from suit. O'Brien and Theut

should be dismissed.

The only claim against hearing investigator Defendant Goodspeed is that he did not investigate a misconduct charge in violation of Plaintiff's due process rights because the failure to investigate kept Plaintiff at a more restrictive security level and "impacted parole decisions." (ECF No. 42, PageID.470-71, at ¶ 110). This is not a cognizable claim. *See Vick v. Core Civic*, 329 F. Supp. 3d 426, 455 (M.D. Tenn. 2018). "Absent evidence that a prison official 'directly participated in, encouraged, authorized[,] or acquiesced' in the unconstitutional acts, a prison official who denies an administrative grievance or fails to intervene on the inmate's behalf cannot be liable under § 1983 as a matter of law." *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). The claim against Goodspeed is essentially a claim that Goodspeed failed to intervene on Plaintiff's behalf. Thus, the claim against Goodspeed should be dismissed.

### d. Supervisory Liability

Defendants MacLaren, Mackie, Ball, and Haas were dismissed from the original complaint because Plaintiff based his claims against them on their supervisory authority. (ECF No. 6, PageID.174-75). Plaintiff again named MacLaren, Mackie, and Ball in the amended complaint.

Plaintiff alleges Defendant KCF Warden MacLaren "had a policy or custom to knowingly acquiesce or implicitly authorize subordinates to retaliate and harass prisoners. . . . [MacLaren] was aware of numerous complaints Plaintiff and other

prisoners brought to his attention, but [he] was deliberately indifferent and callous toward Plaintiff's federal rights." (ECF No. 42, PageID.460, at ¶ 51). He alleges URF Warden Mackie "acted with a policy or custom of deliberate indifference to refuse to correct Plaintiff's Security Classification Points" at URF. (*Id.* at PageID.467, at ¶ 94). Mackie allegedly ordered a retaliatory transfer and denied him access to the courts. He alleges Deputy Warden Ball conspired to cause his grievances to go uninvestigated or to cover up the wrongdoing of coworkers. (*Id.* at PageID.469, at ¶ 102). Plaintiff did not expound on any of these theories.

An official cannot be held liable under a theory of supervisory liability. A supervisor's mere failure to act is therefore not enough to establish supervisory liability; instead "supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*,199 F.3d at 300 (emphasis added) (internal quotation marks omitted). The Sixth Circuit has interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross*, 818 F.3d at 242 (quoting *Shehee*, 199 F.3d at

300).  The Sixth Circuit has traditionally found supervisory liability claims to be

plausible only when a supervisor is on notice of misconduct *and* in some way acts

in relation to the misconduct.  *Colson v. City of Alcoa, Tennessee*, 2017 WL

4019596 (E.D. Tenn. Sept. 11, 2017); *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir.

1988) ("[S]he has merely claimed that the appellants were aware of the alleged

harassment, but did not take appropriate action.  This is insufficient to impose

liability on supervisory personnel under § 1983.") (citation omitted)); *Hays v.

Jefferson Cnty., Kentucky*, 668 F.2d 869, 873–74 (6th Cir. 1982) ("The mere

'failure to act (even) in the face of a statistical pattern' of incidents of misconduct .

. . [is] insufficient to base [supervisory] liability on.") (quoting *Rizzo v*. Goode, 423

U.S. 362, 376 (1976))).

It is not enough for a plaintiff to simply allege the defendants implicitly

authorized or approved unlawful conduct with no factual assertions to support the

claim.  *See Smith v. Bolton*, 2017 WL 5180960, at *3 (W.D. Ky. Nov. 8, 2017)

("While Plaintiff's Complaint offers a formulaic recitation of the elements

claiming that 'defendants directly participated in unconstitutional conduct

described herein, encouraged it, implicitly authorized it, approved it, and/or

knowingly acquiesced in it,' the Complaint utterly fails to support these conclusory

allegations with any factual assertions.").  Given the conclusory and speculative

nature of the allegations against MacLaren, Mackie, and Ball, these defendants

should be dismissed from the amended complaint.

      e.     Eighth Amendment

In the context of medical care, a prisoner's Eighth Amendment right to be

free from cruel and unusual punishment is violated only when the prisoner can

demonstrate a "deliberate indifference" to his serious medical needs. *Estelle v.*

*Gamble*, 429 U.S. 97, 104-06 (1976). A viable Eighth Amendment claim has two

components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S.

825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). A

court considering a prisoner's Eighth Amendment claim must ask both if the

alleged wrongdoing was objectively harmful enough to establish a constitutional

violation and if the officials acted with a sufficiently culpable state of

mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Under the objective component, "the plaintiff must allege that the medical

need at issue is 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. A plaintiff can

establish that a medical need is sufficiently serious by showing that it is "'one that

has been diagnosed by a physician as mandating treatment or one that is so obvious

that even a lay person would easily recognize the necessity for a doctor's

attention.'" *Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2005) (quoting *Harrison v.*

*Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). The subjective component requires that

the defendant act with deliberate indifference to an inmate's health or safety.

*Farmer*, 511 U.S. at 834.  Deliberate indifference "entails something more than mere negligence," *id.* at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*  To establish the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Id*. at 837.

One of Plaintiff's Eighth Amendment amended complaint allegations is the same as the allegation in the original complaint.  Plaintiff alleges he was in a suicide observation cell without a camera or a prisoner observation assistant. There was a jagged bolt sticking out of the floor which he used to cut his wrists. He was taken to the hospital.  The next day he was transferred to KCF from URF "without mental health treatment" but with a prisoner observation assistant in the cell with him.  (ECF No. 42, PageID.462-63, at ¶¶ 66-68).  Defendants Unknown Warden, Unknown Deputy Warden, Unknown Captain #1, and Unknown Unit Chief, all from URF, are named as the persons responsible for having him sent to the hospital and brought back to the prison.  These allegations were addressed and dismissed in the screening Opinion and Order.  (ECF No. 6, PageID.176-77). Then, as now, Plaintiff failed "to allege any way in which these named defendants

knew of and disregarded an excessive risk.  [Plaintiff did] not allege that these defendants were aware the segregation cell contained a sharp-edged bolt.  Given that [Plaintiff] was transferred to a different facility less than 24 hours after harming himself, defendants could not reasonably be expected to provide him with meaningful mental health treatment."  (*Id.*).

As this is the only claim against Defendants Unknown Warden, Unknown Deputy Warden, Unknown Captain #1, and Unknown Unit Chief, these defendants should be dismissed.

The only claim against defendants Beauvais and Dr. Posios is: "On February 8, 2019, Plaintiff was again discharged from the Resident Treatment Program (RTP) by defendants Beauvais and Dr. Posios with deliberate indifference to Plaintiff's mental health needs."  (ECF No. 42, PageID.471, at ¶ 113).  Plaintiff failed to allege he had a sufficiently serious medical need to stay in the Resident Treatment Program to satisfy the objective component.  He also failed to allege Beauvais and Dr. Posios perceived facts from which to a infer substantial risk to Plaintiff, they did in fact draw the inference, and they then disregarded the risk by transferring him.  Because Plaintiff did not sufficiently plead the claim against these defendants, they should be dismissed.

B.    Motion to Transfer or Sever

MDOC Defendants argue venue is improper in this District.  To get to this conclusion, they argue first that three defendants named in the original complaint who survived the screening Opinion—Floyd and two unnamed defendants—are from the Eastern District and should be dismissed for Plaintiff's failure to exhaust administrative remedies against them.  Once dismissed, only MDOC Defendants remain and reside and work in the Western District.  Thus, they argue the case should be transferred to the Western District.

As explained above, Plaintiff has filed an amended complaint and additional defendants are now in this case.  The factual underpinning of MDOC Defendants' is no longer relevant.  Further, the undersigned will not entertain MDOC Defendants' argument that the non-moving, as-of-yet unrepresented defendants from JCF (defendant Deputy Warden Floyd and other JCF employees) should be dismissed because Plaintiff failed to exhaust administrative remedies against them.  Unless those defendants move for summary judgment on the issue of exhaustion of administrative remedies, any ruling on that issue would be inappropriate.

Because the undersigned does not recommend dismissing the JCF defendants, MDOC Defendants' argument that they are the sole remaining defendants and thus this case should be transferred to the Western District is moot.

In the alternative, MDOC Defendants raised another argument: if the JCF defendants are kept here, the case should be severed because Plaintiff improperly

joined claims and defendants.  (ECF No. 34, PageID.279-82).  They assert the

same argument in response to Plaintiff's motion to amend the complaint.  (ECF

No. 44, PageID.484).

Because MDOC Defendants' motion to transfer or sever is directed at the

original complaint and Plaintiff has now been given leave to file his amended

complaint, the motion should be denied without prejudice.  Additionally, although

Federal Rule of Civil Procedure 21 allows the Court to add or drop a party (i.e.,

sever claims or defendants) on its own, at this time the undersigned declines to

address potential severance.  Until there is a ruling on this Report and

Recommendation, the claims proceeding will not have been finally determined.

Thus, the undersigned will not yet address whether claims and/or defendants

should be severed.

C.    Conclusion

In conclusion, the undersigned suggests the conspiracy claims be dismissed

in whole and the following defendants be dismissed: Sgt. Curtis, Lt. Lavine,

Unknown Captain #1, Unknown Captain #2, Bridges, Leach, O'Brien, Theut,

Goodspeed, MacLaren, Mackie, Ball, Unknown Warden, Unknown Deputy

Warden, Unknown Unit Chief, Beauvais, Posios, Patrick, Stephenson, and Golson.

Because the amended complaint is now the operative complaint, the undersigned

suggests MDOC Defendants' motion to transfer the case to the Western District be denied without prejudice.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Court summarily dismiss from the amended complaint the claims and defendants listed above in the Conclusion, and **DENY WITHOUT PREJUDICE** MDOC Defendants' Motion to Transfer or Sever.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:  December 27, 2021.                              s/Curtis Ivy, Jr.
                                                       Curtis Ivy, Jr.
                                                       United States Magistrate Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of
record and any unrepresented parties via the Court's ECF System or by First Class
U.S. mail on December 27, 2021.


                                                       s/Kristen MacKay
                                                       Case Manager
                                                       (810) 341-7850